[Civ. No. 13495.   First Dist., Div. One.   Jan. 26, 1948.]

SERAGAN KARAPETIAN et al., Respondents, v. JOSEPH T. CAROLAN et al., Appellants.

Eugene H. O'Donnell and Ralph Bancroft for Appellants.

John K. Hagopian for Respondents.

PETERS, P. J.—This action was brought by plaintiffs against defendants to recover damages for the alleged fraud and deceit of defendants. The cause was tried before a jury, resulting in a verdict of $3,500. Defendants appeal from the judgment entered on that verdict.

Appellants do not challenge the sufficiency of the evidence to sustain the implied finding that they were guilty of fraud; in fact, the sole point made by them is necessarily predicated on the premise that they were fraudulent. Thus at all times it must be kept in mind that defendants stand before this court asking reversal of a judgment in a case where they have been found guilty of fraud and where they admit that the finding of fraud is supported.

The sole point relied upon by appellants arises because of the following facts: The evidence showed that the contract of sale here involved was closed August 8, 1945. While one of the respondents was on the witness stand it developed, on both her direct and cross-examination, and without ob-

jection by respondents, that prior to filing this action respondents had sent to appellants two notices of rescission, one dated August 23, 1945, and one dated September 13, 1945. In these notices the respondents informed appellants that rotting had been discovered in the foundations of the house purchased, charged appellants with having fraudulently concealed this defect during the negotiations, tendered back a deed to the premises, demanded the return of the $2,000 down payment made by them and the cancellation of a promissory note and two mortgages given to secure payment of the balance of the purchase price. Appellants refused to return the consideration received by them, and, after respondents had moved from the premises, refused to accept the key from respondents. Thus, as testified to by one of the respondents, the appellants did not "act upon this rescission." After this refusal by appellants this action for damages for the fraud was filed November 19, 1945.

It is the theory of appellants that upon discovering the fraud the respondents had an election of two inconsistent remedies, one to disaffirm the contract and rescind, and the other to affirm the contract and sue for damages. That is undoubtedly the law. Appellants next contend that respondents made an irrevocable election when they notified appellants of their desire to rescind. It is their theory that the rescission became complete by the unilateral act of respondents in giving the notice of rescission, and thereafter their sole remedy was to recover the consideration paid by them. After the notice of rescission was sent, say appellants, the contract was forever disaffirmed and had no further existence, so that it could not, thereafter, be used as a basis of an action for damages. This conclusion, according to appellants, is inescapable under the appropriate code provisions as interpreted by the California cases.

Before this point is discussed on its merits there is one preliminary matter to which reference should be made. The record shows that appellants did not raise this "election by notice of rescission" defense in their pleadings, but raised it for the first time in a motion for nonsuit. Appellants offer no excuse for not having pleaded this defense, and it does not appear that they offered any instructions which would have limited the jury's right to make an award in excess of the down payment made by respondents. Professor Williston in his well-known work on Contracts, volume 5 (rev. ed.), sec-

tion 1528, page 4279, at page 4285, states: "The defense of election of remedies must be affirmatively pleaded to be available." Thus, if this court desired to be technical, it could refuse to consider appellants' "election by notice of rescission" point for the reason that it was not properly raised. But in view of the facts that the evidence relating to the claimed rescission came into the case without objection by respondents, that respondents admitted sending the letters in question, and that respondents, neither in the court below nor in their respondents' brief, made the contention that this defense is not available to appellants because not made in the pleadings or tendered by the instructions, we have determined to treat the point as properly raised, and to dispose of it on its merits.

■ There can be no doubt that the remedies of rescission and an action for damages are inconsistent and that a completed or effectual rescission terminates the contract and bars an action for fraud. (*McCready* v. *Bullis*, 59 Cal.App. 286 [210 P. 638]; *Davis* v. *Rite-Lite Sales Co.*, 8 Cal.2d 675 [67 P.2d 1039].) The correct rule, supported by authorities, is stated as follows in 6 California Jurisprudence, page 388, section 233: "Upon the breach of a contract a party thereto may treat it as rescinded, and if he has advanced money on it, bring an action for its recovery; or he may treat the contract as still in force and maintain an action for damages for the breach, but he cannot pursue both courses. If the facts exist which justify a rescission by one party, and he exercises his right and declares a rescission in some effectual manner, he terminates the contract, and it cannot thereafter be made the basis of an action for damages caused by breach of the covenants."

The real questions are, when does the rescission become so complete or effectual as to terminate the contract? Has the one defrauded made an irrevocable election by sending to the wrongdoer a notice of rescission, where the wrongdoer refuses to rescind? These questions have never been directly answered in California. An examination of the decided cases demonstrates that in some cases involving other phases of the law of rescission language can be found that can be used to support the conclusion that sending such a notice constitutes an irrevocable election, while language in other cases clearly indicates that the election does not become irrevocable until the contract has been "effectually"

disaffirmed, and that such "effectual" disaffirmance occurs only when the defrauded party receives back his consideration. While this confusion exists in the language of the California cases, no such confusion exists in the Restatement of the Law of Contracts and the Restatement of the Law of Restitution.

Section 485(1) of the Restatement of Contracts provides: "Where a transaction is voidable for fraud or misrepresentation, and the injured party has exercised his power of avoidance, a subsequent manifestation of intent to affirm the transaction is inoperative, unless the party guilty of the fraud or misrepresentation also manifests assent thereto by refusal to accept return of the consideration or otherwise." In "Comment (a)" to this section appears the following: "Election to avoid when made is as conclusive as election to affirm. The first manifestation of either avoidance or affirmance is final. The wrongdoer, however, frequently desires that the transaction improperly induced shall be sustained. He may manifest such a desire by refusing to receive back consideration that he parted with, or in other ways. If the injured party then manifests a willingness to validate the transaction, this subsequent manifestation of mutual assent nullifies the previous avoidance." Under this section it would appear that when the innocent party sends the notice of rescission the contract is disaffirmed, but when the fraudulent party refuses to rescind that amounts to an offer to reinstate the contract which is accepted by the innocent party by bringing an action for damages.

The Restatement of Restitution reaches exactly the same result, but on a somewhat different theory. Section 68(2) provides:

"A person who avoids a transaction is not entitled subsequently to affirm the transaction, unless the avoidance was induced by the fraud, material misrepresentation or duress of the transferee. A person does not avoid a transaction until:

"(a) he has regained all or a substantial part of what he gave and to which he would be entitled only upon avoidance, or

"(b) he has obtained a final judgment or decree based upon the avoidance, or

"(c) the other party has changed his position in reliance upon a statement of disaffirmance or has manifested his consent thereto."

In "Comment f" to this section appears the following:

"A manifestation of an affirmance of a voidable transaction made freely and without mistake cannot be rescinded; a manifestation of a disaffirmance, however, does not of itself operate as an avoidance. Thus a statement that one disaffirms, or ineffectual attempts to obtain what has been given, are not conclusive. Likewise, bringing a proceeding for restitution which, for any reason, is unsuccessful, does not prevent further proceedings or further action based upon the validity of the transaction. *There is no definitive avoidance until the person seeking to avoid has regained all or part of what he gave,* has obtained a judgment or decree by the enforcement of which he will be put back into his original position, has caused the other party to change his position in reliance upon the avoidance, or has contracted with the other party upon the basis of this disaffirmance." (Italics added.) The very first example given in the restatement of the application of this rule is as follows: "By fraud A buys goods from B. Upon discovery of the facts B writes to A asking for the return of his goods and offering to return the purchase price. A refuses to do this. B is entitled to maintain an action of deceit against A." That is exactly the case at bar. The rationale of this rule seems to be that when the innocent party gives notice of rescission, and the fraudulent party does not comply, the fraudulent party has rendered the attempted rescission "ineffectual" and the innocent party should still have the right to elect to affirm or disaffirm. In the California annotations to section 485(1) of the Restatement of Contracts it is stated "California is probably in accord," while the California annotations to section 68(2) of the Restatement of Restitution states that this state is "in accord."

There can be no doubt that the rules announced in the Restatement are sound, and reach the fair and equitable result. This being so, such rules should be followed unless the statute or case law of this state compels or suggests a different result. As was said in *Canfield* v. *Security-First Nat. Bank,* 13 Cal.2d 1, 30 [87 P.2d 830]: "Although it is true . . . that the restatement does not constitute a binding authority, considering the circumstances under which it has been drafted, and its purposes, in the absence of a contrary statute or decision in this state, it is entitled to great consideration as an argumentative authority. It purports to accurately reflect the general common law of the United States, and

where there is a conflict, to state the general and better rule on any given subject.'' (See, also, *Scholey* v. *Steele*, 59 Cal. App.2d 402, 405 [138 P.2d 733].) We turn then to the statute and case law of this state.

The governing code sections are to be found in the Civil Code, sections 1688 to 1691. Section 1688 provides that ''A contract is extinguished by its rescission.'' Section 1689 sets forth the grounds of rescission, subdivision 1 providing that one such ground is fraud, and subdivision 5 providing that a contract may be rescinded by consent. Section 1691 provides that ''Rescission, when not effected by consent, can be accomplished only by the use, on the part of the party rescinding, of reasonable diligence to comply with the following rules:

''1. He must rescind promptly . . .

''2. He must restore to the other party everything of value which he has received from him under the contract; or must offer to restore the same, upon condition that such party shall do likewise, unless the latter is unable or positively refuses to do so.''

It is quite obvious that under these sections a rescission may be effected by the bilateral action of both parties, i. e., by consent, or by the unilateral action of the innocent party, where the basis of the rescission is the fraud of the other party. But the code sections are not helpful and certainly not decisive in determining when an irrevocable election has been made.

The cases are likewise not decisive on this issue. It is undoubtedly the law, as contended by appellants, that where the innocent party has a right to rescind because of the fraud of the other party, and gives notice of rescission to that other party and offers to restore, the innocent party then has the right to sue for recovery of all things of value received by the fraudulent party. (*Hammond* v. *Ocean Shore Dev. Co.*, 22 Cal.App. 167 [133 P. 978]; *Fitzhugh* v. *University Realty Co.*, 46 Cal.App. 198 [188 P. 1023].) But these cases do not hold that such a notice of rescission constitutes an irrevocable election on the part of the innocent party. Other cases cited by appellants do contain language helpful to them. Thus, in *Ito* v. *Watanabe*, 213 Cal. 487, 488 [2 P.2d 799], appears the language: ''But a rescission may be effected by notice and restoration or tender of the consideration, without the necessity of an action.'' In *Prewitt* v. *Sun-*

*nymead Orchard Co.,* 189 Cal. 723, 731 [209 P. 995], appears the following language: "It is said in Benjamin on Sales, 5th ed., p. 461, that 'It is not necessary that there should be a judgment of court in order to effect the avoidance of a contract, when the deceived party repudiates it. The rescission is the legal consequence of his election to reject it, and takes date from the time at which he announces this election to the opposite party.' " In *American Type etc. Co.* v. *Packer,* 130 Cal. 459 [62 P. 744], the court first stated that the innocent party had served a notice of rescission based upon the other party's failure to perform, and then stated (p. 467): "From the evidence the rescission was complete and perfect, and the court should have so found." In *Loaiza* v. *Superior Court,* 85 Cal. 11, 31 [24 P. 707, 20 Am.St.Rep. 197, 9 L.R.A. 376], appears the following statement: "It does not require mutual consent of the parties to rescind. Under section 1689, either party may rescind when consent was given by mistake or obtained by fraud. According to the record, the purchasers did actually rescind, and rescind promptly, before the action was brought, and did all that is required of them by section 1689, which gives them the right, and section 1691, which prescribes the mode of rescission. They did not restore, because restoration was not accepted; but they offered to restore, and in the action they again offer to restore, everything of value received by them under the contract. This offer, with the prompt and proper notice, makes the rescission complete, and entitles them to the aid of a court of competent jurisdiction in securing to them the results and fruits of the rescission. To secure those results and fruits is the object of the action they have brought." Other cases could be cited to the same effect. These cases, while containing language that tends to indicate that the rescission is complete upon giving notice thereof, did not consider because they did not involve the question as to whether the giving of such notice of rescission, together with an offer to restore, constitutes an irrevocable election where the guilty party refuses to restore the consideration received by him.

As opposed to these cases there are a series of cases that have developed the doctrine that for a rescission to constitute an irrevocable election it must be an "effectual" disaffirmance. This doctrine has been announced in several different kinds of cases. Thus it is now well settled that the

innocent party may set forth in his complaint against the fraudulent party a cause of action for rescission, and in a second cause of action ask for damages, if for any reason rescission is not granted. One of the leading cases announcing this rule is *Bancroft* v. *Woodward*, 183 Cal. 99, 101 [190 P. 445], where it was stated: ''While it is true that a party induced to enter into a transaction by fraud, affirms the transaction when he brings an action for damages and because of the affirmance loses any right to disaffirm subsequently [citing case], it is not true that if he seeks to disaffirm, but ineffectually, he loses the right thereafter to maintain an action for damages. The right to damages exists unless and until the transaction is effectually disaffirmed. It could hardly be questioned, for example, that under a complaint which, by proper and sufficient averments set out that the plaintiff had been induced by fraud to enter into a contract and had endeavored to rescind it because of such fraud, and prayed relief upon the basis of a rescission, the plaintiff might be accorded damages in case the fraud were found but under such circumstances that the right of rescission did not exist. To put the matter in another way, it is wholly inconsistent for a party defrauded to ask for damages first and a rescission if he cannot have them. But there is nothing inconsistent in his asking for rescission first and damages if he cannot have it. The defendant here by his counterclaim and cross-complaint filed at the same time has gone no further than to say that he is entitled either to damages or to rescission, and that if he cannot have the latter he asks the former. There is nothing in this that constitutes an affirmance so that his right to rescission is gone.'' (See, also, *Murphy* v. *Sheftel*, 121 Cal.App. 533 [9 P.2d 568].)

It has also been held that where a party brings an action for rescission and it is held that such remedy is unavailable, such election is not irrevocable, but the innocent party may later maintain an action for damages. (*Papenfus* v. *Webb Products Co.*, 48 Cal.App.2d 631 [120 P.2d 60].)

There are also cases holding that where the defrauded party sends a notice of rescission based upon fraud to the other party, but the fraudulent party has disposed of the property received from the innocent party, and so of course cannot restore the property, the innocent party may maintain an action for damages for the fraud, the notice of rescission not constituting an ''irrevocable'' election. The leading

case announcing this rule is *Montgomery* v. *McLaury,* 143 Cal. 83 [76 P. 964]. There, as here, the fraudulent party contended that the sending of the notice of rescission constituted an irrevocable election. The Supreme Court answered this contention as follows (p. 88) : ". . . there is no such rigid and inexorable rule as to election of remedies in cases of fraud as that for which the appellants contend. It is undoubtedly true that when one who has been defrauded in a contract elects to affirm it after discovery of the full extent of the fraud he cannot afterwards claim a rescission. This is simply a result flowing from the general doctrine of estoppel. But an election to disaffirm a contract induced by fraud, and an effort to obtain a rescission, will not, if resisted, and especially if rendered impossible or difficult or of doubtful advantage by the act of the guilty party, bar an action based upon a subsequent affirmance of the contract, and the commencement of such action is itself an affirmance." This language, although used in a case where rescission was impossible because the fraudulent party no longer had the property received by him, is identical in effect with that used in the Restatement of Restitution above quoted. (See, also, *Waters* v. *Woods,* 5 Cal.App.2d 483 [42 P.2d 1072].)

Another case which is perhaps the most closely in point is *Del Vecchio* v. *Savelli,* 10 Cal.App. 79 [101 P. 32]. There the innocent party gave a notice of rescission to the fraudulent seller. Later the innocent party determined that he had not acted promptly and so was not entitled to a rescission, and brought an action for damages. The fraudulent seller contended that an irrevocable election had been made, and that an action based upon affirmance of the contract would not lie. The court answered this contention as follows (p. 83) : "We do not understand that appellant claims that respondent, upon the discovery of the fraud, should have taken steps to rescind the sale to maintain this action, for he certainly had his election to rescind the sale and return the property, or to retain the property and prosecute his claim for damages for false and fraudulent representation. He does, however, seem to claim that as respondent did give notice of rescission (although subsequently he concluded that too much time had elapsed to make rescission effective), he was bound to pursue that remedy, and that therefore he could not maintain this suit for damages. No authorities are cited to support this theory, and comment is unnecessary."

Another case where a party was permitted to sue for damages after giving a notice of rescission is *Hjorth* v. *Bernstein*, 44 Cal.App.2d 561 [112 P.2d 643]. In that case the plaintiff had been defrauded in the purchase of certain oil royalties. The sellers were named Lison, but the fraudulent representations were made by Bernstein, who was not the agent of the Lisons. The Lisons were innocent of the fraud. The plaintiff served a notice of rescission on the Lisons, and then filed a complaint against both the Lisons and Bernstein asking, in the first count for a rescission, and in the second count for money had and received. No basis for a rescission against the Lisons existed, and the court so held, but it granted a money judgment against Bernstein for his fraud. Bernstein appealed, contending that by the notice of rescission the plaintiffs had irrevocably elected to disaffirm the contract. At page 564 the court disposed of this contention as follows: "Appellant contends, secondly, that the law is well settled that a person claiming to be defrauded by false representations has a choice of two inconsistent remedies, to wit, he may elect to rescind the contract; or, to affirm it and claim damages. He cannot do both. We quite agree with appellant in this connection. However, it is well settled in California that the right to damages exists in cases of this character unless and until the transaction is effectually disaffirmed. It is, of course, inconsistent for the party defrauded to rely upon the contract and seek damages thereon for fraud, and in the event that he is prevented from recovery to thereafter file an action for rescission. But, in this case, an action for rescission was denied for the reason that the court deemed the same inequitable for the reason that the Lisons, who owned the oil royalty, had never participated in the fraud and for the further reason that appellant Bernstein, who had committed the fraud, was not an agent of the Lisons. Rescission, therefore, would have been ineffectual."

The court quoted at length from the Woodward case, *supra,* and then stated (p. 566): "In view of the rule of law enunciated in the Woodward case, we are of the opinion that the complaint and the evidence submitted without objection definitely entitles the plaintiffs to recover against the appellant Bernstein for damages for the fraud perpetrated by him." (See, also, *House* v. *Piercy*, 181 Cal. 247 [183 P. 807].)

From this analysis of the cases it would appear that while a few opinions have used language indicating that a

notice of rescission once given constitutes an election to disaffirm, the majority and the best reasoned cases, where it appears that the fraudulent party has made the attempted rescission ineffectual, have held in exact accord with the Restatement rule that the rescission is not an "irrevocable" election. If, as was held in *Montgomery* v. *McLaury, supra,* where the fraudulent party has disposed of the consideration received by him, the notice of rescission by the innocent party does not constitute an irrevocable election and the rescission is not "effectual," it would appear obvious that where the fraudulent party makes the rescission "ineffectual" by refusing to return the consideration, the same rule should apply. The notice of rescission should not be held to be an "irrevocable" election until it is made "effectual" by the innocent party receiving back the consideration with which he has parted. Where the fraudulent party prevents that from happening, either by parting with the property or by refusing to disgorge his ill-gotten gains, or otherwise, and the innocent party is forced to an action, he should be permitted, if he so desires, to then affirm the contract and sue for damages or to disaffirm and sue for rescission. That is the fair and just rule and the rule recognized in the Restatement. Inasmuch as neither the statute nor the case law of this state compels a contrary rule we are inclined to and do follow and apply the rule of the Restatement.

The judgment appealed from is affirmed.

Ward, J., and Bray, J., concurred.

A petition for a rehearing was denied February 25, 1948, and appellants' petition for a hearing by the Supreme Court was denied March 25, 1948.